CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
April 15, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:19-cr-00003 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| RICHARD BROKAW DAY | ) | Chief United States District Judge |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is defendant Richard Brokaw Day's *pro se* motion for compassionate release. (Dkt. No. 79.)[1] In his letter motion, Day refers to the "Second Chance Act" and asks for a recommendation for one year in "pre-release custody in the Residential Reentry Center (RRC) or in the alternative, a year of home confinement." (*Id.* at 1.) According to publicly available information from the Bureau of Prisons (BOP), Day is currently scheduled to be released in November 2025.

Based on the reasons Day provided in his request, the court construed his request as a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018. (Dkt. No. 80.) The court appointed the Federal Public Defender to represent Day and investigate whether he had a valid claim for compassionate release. It gave the Federal Public Defender twenty-one (21) days to file any supplement to Day's motion or to file a notice stating it did not intend to supplement the motion. (*Id.*)

The Federal Public Defender timely declined to file a supplement to Day's motion. The United States responded in opposition on January 3, 2025, and Day has not filed any further response or reply. For the reasons stated below, the court finds that Day's reasons do not

---

[1] Day filed a separate *pro se* motion on December 7, 2023, asking for a sentence reduction under Amendment 821 to the U.S. Sentencing Guidelines (Dkt. No. 68), which the court denied (Dkt. No. 77).

warrant a post-judgment recommendation to the Bureau of Prisons about the place of his confinement, which is within the BOP's discretion, nor do they warrant a reduced sentence. Day's motion, therefore, whether treated as a request under the Second Chance Act or for compassionate release under the First Step Act, will be denied.

## I.  BACKGROUND

Day is currently serving a sixty-five (65) month sentence after pleading guilty to possession with intent to distribute heroin[2] and possession of a firearm in furtherance of a drug trafficking crime.[3] (Dkt. No. 55.) Day is incarcerated at USP Lee in Virginia, with a projected release date in November 2025.[4]

In his motion, Day explains that because his son's mother died, the child's maternal grandmother is bearing the burden of raising him, as well as another child, and that the boys need Day to help raise them sooner rather than later. (Dkt. No. 79.) He further claims that his son requires frequent medical visits for allergies and that the son's grandmother had to quit her job and is living on a fixed income. (*Id.*) Day argues that if he could get home, he "would be able to be an asset" to his family. (*Id.*)

## II.  ANALYSIS

**A.  Compassionate Release Under the First Step Act**

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence under certain circumstances.  As

---

[2] 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C).

[3] 18 U.S.C. § 924(c).

[4] https://www.bop.gov/inmateloc/ (last visited April. 15, 2025). At the time Day filed this motion, he was incarcerated at FCI Beckley, a medium-security prison in West Virginia. (Dkt. No. 74-1 (copy of envelope).)

amended by the First Step Act on 2018 and in pertinent part,[5] the statute provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i). If a court finds extraordinary and compelling reasons to reduce a sentence, it must then consider the 18 U.S.C. § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's sentence. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

In addition to satisfying the above, the reduction must be "consistent with [the] applicable policy statement[] issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement for compassionate release is found in U.S. Sentencing Guidelines (U.S.S.G.) § 1B1.13 and Commentary. That section was amended, effective November 1, 2023, and now provides an expanded list of "extraordinary and compelling reasons" warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023).

Day's motion under § 3582(c)(1)(A) thus requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is

---

[5] Prior to the First Step Act of 2018, only the Bureau of Prisons could seek relief in court under the statute. The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

appropriate after considering the applicable 18 U.S.C. § 3553(a) factors. As the movant, "[a] defendant seeking compassionate release has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020); *see also United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024) ("A movant for compassionate release bears the burden of showing why the § 3553(a) factors justify a modified sentence."); *United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting that the inmate provided information "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release"). Additionally, and as the terminology in the statue implies, "compassionate release is a rare remedy." *United States v. Horton*, No. CR ELH-19-115, 2023 WL 3390910, at *8 (D. Md. May 10, 2023) (citing *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019)).

**B. Exhaustion**

The court must first consider exhaustion as the threshold requirement for obtaining relief under § 3582(c)(1)(A). *United States v. Muhammad*, 16 F.4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and *either* fully exhausts all administrative rights to appeal the Bureau's decision *or* waits 30 days from the date of their initial request to file a motion in the district court." *Id.* at 131.

As previously mentioned, Day styled his motion as a motion for relief under the Second Chance Act, and the court construed the motion as one for compassionate release under the First Step Act of 2018. (Dkt. No. 80.) When the United States responded to Day's motion, its only comment as to exhaustion was as follows: "Mr. Day does not claim to have exhausted administrative remedies through the BOP, so any Second-Chance claim necessarily fails."

(Opp'n to Mot. 4, Dkt. No. 87.) The United States does not specifically address exhaustion under the First Step Act or under § 3582. Thus, the United States has not challenged exhaustion for any compassionate release motion, and any such argument is deemed waived. *United States v. Davis*, 99 F. 4th 647, 653 n.2 (4th Cir. 2024) ("In *United States v. Muhammad*, we held that § 3582(c)(1)(A)'s exhaustion requirement is a 'non-jurisdictional claim-processing rule' that can be waived or forfeited if not timely raised.'")

The court now examines whether Day has demonstrated "extraordinary and compelling" circumstances to render him eligible for a sentence reduction, including serving any portion of that sentence on home confinement.

## C. Extraordinary and Compelling Reasons

Day's request for "a recommendation for one year in [] pre-release custody in a RRC or one year of [h]ome [c]onfinement, per terms of the Second Chance Act" (Dkt. No. 79, at 1) sounds in U.S.S.G. § 1B1.13(b)(3) when construed as a compassionate-release argument. Additionally, although he may not directly rely on it, Day points to his rehabilitation, so the court treats it as another possible basis for his requested relief.

### 1. Day's Son

The Guidelines recognize a limited set of familial-related circumstances which may constitute extraordinary and compelling circumstances warranting a reduction in sentence. Of them, only one is potentially applicable to Day's motion (or possibly two, as it relates to the other child). Specifically, "[t]he death or incapacitation of the caregiver of the defendant's minor child . . ." is an extraordinary and compelling circumstance under U.S.S.G. § 1B1.13(b)(3)(A). *See also* U.S.S.G. § 1B1.13(b)(3)(D) (also listing "circumstances similar to those" in subsections (A) through (C) involving "an individual whose relationship with the defendant is similar in kind

to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual").

Day states that his child's mother, who was also the mother of another young boy whose father died before he was born, recently passed away. (Mot. 1, Dkt. No. 79.) Day's child's maternal grandmother, Diana Leffel, is raising both Day's son and the other young boy. (Mot. 2.) Day further avers that the since their mother's passing the boys have become difficult to handle and act out in disobedience. (*Id.*) The boys' grandmother gave up her career as a nurse and does her best to raise the boys but is apparently stretched thin and could use support. (*Id.*) Day requests pre-release custody in an RRC or a year of home confinement so that he can be closer to the boys and help raise them. (*Id.* at 1.)

In the framework of a compassionate-release argument, Day's claim sounds in § 1B1.13(b)(3)(A), which provides that the "death or incapacitation of the caregiver of the defendant's minor child" is one familial-related circumstance that can constitute an extraordinary and compelling reason for a reduction in sentence.

While the court empathizes with Leffel's situation, Day's compassionate release under 1B1.13(b)(3)(A) given these particular circumstances is not appropriate. Courts "generally deny compassionate release when another suitable caregiver is available for a defendant's child." *United States v. James*, No. 7:19-cr-00024, 2023 WL 6164018, at *3 (W.D. Va. Sept. 21, 2023). *See also United States v. Sanchez*, No. 2:20CR00010, 2024 WL 1653769 (W.D. Va. Apr. 16, 2024) (denying a compassionate release claim under 1B1.13(b)(3)(A) when records submitted by the incarcerated individual indicated that there may be relative caregivers available to take custody of child); *United States v. Barlow*, No. 7:19-CR-00024-4, 2023 WL 2755598, at *3–4 (W.D. Va. Mar. 31, 2023) (denying compassionate release in a case where the child lived with

her paternal aunt while both parents were incarcerated and emphasizing that the aunt's age (sixty years old), work outside the home, and exhaustion caring for the child do not constitute allegations of incapacitation).

In totality, "case law indicates that extraordinary and compelling circumstances based on the need to care for children are found only where the defendant is the only possible caregiver of the children needing care." *James*, 2023 WL 6164018, at *3. *But see United States v. Taylor*, No. 3:15-00009, 2020 WL 6532844, at *1 (S.D.W. Va. Nov. 3, 2020) ("[A]s the Court of Appeals suggested, the Court subsequently held that Mr. Taylor is not required to show that he is the *only* available caregiver to obtain relief) (emphasis added).

Courts grant these requests despite the existence of another suitable caregiver (meaning, other than the incarcerated individual) exceedingly rarely. *James* is one such case. In that case, the court found that James made a sufficient showing to demonstrate that her children's caregiving grandmother suffered from severe illness rendering her effectively incapacitated and incapable of caring for the children. *James*, 2023 WL 6164018, at *4. James' grandmother, however, "[i]s 76 years old and suffers from . . . problems affecting her heart and chronic kidney disease. James' grandmother has told her that she is overwhelmed with taking care of the three boys . . . and James fears losing the boys to the foster care system." *Id.; see also United States v. Henriquez*, No. 1:15-cr-225-1, 2021 WL 5771543, at *3–5 (M.D.N.C. Dec. 6, 2021) (granting compassionate release despite the existence of an alternative caregiver where the court found defendant's familial circumstances extraordinary only when considered in conjunction with his model behavior in prison, deep efforts at successful rehabilitation, work ethic, support of Bureau of Prison employees, and length of sentence served).

In the present case, Day does not allege that the boys' caregiver is incapacitated. On the contrary, Day asserted that Leffel "does her best and gives both boys all the love and attention that she is able to give." (Mot. 2.) Day submits that the boys are difficult to handle, act out including by hitting each other and their grandmother, and have needed police intervention to get to school. (*Id.*) Additionally, Day's son needs routine trips to the doctor for allergies and skin conditions, and Leffel gave up her career as a nurse and lives on a fixed income. (*Id.*)

The court does not downplay the hardship faced by both Leffel and the boys. Nevertheless, Day does not allege circumstances that meet the "high bar" to demonstrate incapacitation of the child's caregiver. *See James*, 2023 WL 6164018, at *4. Unlike the caregiver in *James*, Leffel does not appear to have any serious health issues that would preclude her caring for the children. Additionally, while Day notes that Leffel lives on a fixed income, there is no indication from Day that he is at risk of losing the children to the foster system because of Leffel's financial situation, especially given the relatively short length of time left on his sentence. Moreover, like the defendant in *Barlow*, Day has made no allegation that Leffel is incapacitated, that the boys are in danger, or that the care Leffel provides the boys is inadequate.

The court does not deny Leffel's statement that it would be easier if Day were home to help with the boys. (Mot. 2.) However, "[t]he simple fact is that the [c]ourt is confronted on a regular basis with the fact that defendants who are incarcerated are separated from their families, including a spouse, a child, even newborn children. For that reason, those circumstances simply cannot be considered as extraordinary." *Barlow*, 2023 WL 2755598, at *4.
Accordingly, the court finds that Day has not presented extraordinary circumstances here.

### 2. Rehabilitation

While rehabilitation "is not by itself an extraordinary and compelling reason for early release[,] . . . it may be considered in combination with all other circumstances in determining whether early release is acceptable." *See United States v. Davis,* 99 F.4th 647, 659 (4th Cir. 2024) (rejecting the argument that rehabilitation can only be considered in § 3553(a) analysis and stating that it may be considered "as one factor among several" in determining whether a movant has shown "extraordinary and compelling" circumstances). Although the court acknowledges Day's efforts towards rehabilitation—which include taking a 40-hour drug education class and "successfully participating" in a Medication-Assisted-Treatment Program, holding down a job in vocational tech, and completing multiple release prep programs (Mot. 3)—it does not find that his rehabilitation efforts, either alone or in combination with all other circumstances, are enough to constitute extraordinary and compelling reason to grant a compassionate release at this time. *Cf. Centeno-Morales*, 90 F.4th at 279 (affirming denial of compassionate release motion and noting that completion of a few vocational courses, coupled with two disciplinary infractions, was not a "mountain" of mitigating evidence of post-sentencing rehabilitation and contrasting those facts with a case where an inmate had been incarcerated for almost two decades, had become a respected tutor for other inmates and had such "exemplary behavior" that she was moved into a low-security facility).

### D.  § 3553(a) Factors

Even if Day were able to demonstrate that his circumstances meet the extraordinary and compelling threshold, the court still has discretion as to whether to reduce his sentence. The court looks to the § 3553(a) sentencing factors, which include the nature and circumstances of the offense, the history and characteristics of the defendant, the deterrence of crime, the

protection of the public, and the need for the sentence to provide a just punishment. A district court must "set forth enough to satisfy [the appellate] court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate review." *Centeno-Morales*, 90 F.4th at 279.

Considering these factors, the court concludes that they militate against Day's early release from his incarceration. Day pleaded guilty to possession with intent to distribute heroin and possession of a firearm in furtherance of a drug trafficking crime. Day fled from law enforcement on the day of his arrest, first by moped and then by foot. When he was apprehended, Day had two firearms as well as various items consistent with heroin distribution.

Moreover, despite his young age—he was 21 years old at the time of the offense—Day had a significant criminal history. Prior to this offense, he had numerous run-ins with the law that included drugs and weapons charges, as well as contempt of court. As a result of those crimes for which Day pleaded guilty or was convicted, he had a criminal history category of V. Additionally, Day committed the offenses for which he is currently incarcerated while under a criminal justice sentence. Based on this history, there is a significant need to promote respect for the law and to protect the public, to deter, and to punish. A reduced sentence would not suffice to serve those ends.

Furthermore, he pled guilty pursuant to a Rule 11(c)(1)(C) plea for a binding range below what his guideline range otherwise would have been, to account for his young age and the amount of heroin involved in the offense, among other factors. Thus, his plea agreement already resulted in a sentencing range lower than it would have been without the agreement, and he was sentenced within that binding range.

Day has indeed demonstrated efforts at rehabilitation. The court applauds those efforts. Nonetheless, the circumstances and sentencing factors do not warrant release, even though Day has approximately 7 months left on his sentence.

For the above reasons, the court will deny Day's motion for compassionate release.

### E. Second Chance Act

As mentioned at the outset, Day styled his motion as a motion for relief under the Second Chance Act, and the court construed the motion as one for compassionate release under the First Step Act of 2018. The Second Chance Act directed the BOP "to the extent practicable" to place prisoners in conditions to facilitate reentry, which could include home confinement or a reentry center. 18 U.S.C. § 3624(c). As the United States notes, Day has not alleged or shown that he sought such relief from the Bureau of Prisons, so there is no decision for this court review and he has failed to exhaust remedies. *United States v. Broadway*, No. 3:08-CR-00010-MR-2, 2018 WL 5817939, at *1 (W.D.N.C. Nov. 6, 2018) (explaining that a challenge to the BOP's denial of such a request should be brought in an action under 28 U.S.C. § 2241, after first exhausting all remedies through the Bureau of Prisons) (citations omitted).

Further, the authority to make such placement decisions rests with the BOP; it does not permit courts to dictate where a particular inmate will be housed. *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 251 (3d Cir. 2005) (noting, in a pre-Second Chance Act case, that while the BOP must consider certain factors in making a decision about re-entry placements, the BOP has discretion over that decision; "[t]hat the BOP may assign a prisoner to a [correctional community center] does not mean that it must"); *Miller v. Lappin*, No. 7:09CV00012, 2009 WL 166873, at *2 (W.D. Va. Jan. 26, 2009) (denying request for mandamus and explaining that 18 U.S.C. § 3624(c), as amended by the Second Chance Act of 2007, "does not require the court or

11

BOP officials to place Miller in community or home confinement for any portion of his sentence[; the] decision regarding such placement remains discretionary").

Indeed, district courts within the Fourth Circuit have rejected requests for such placement, for a variety of reasons. *E.g.*, *Mubang v. Warden, Hazelton Secure Female Facility*, No. 1:18CV181, 2020 WL 1902552, at *9 (N.D.W. Va. Jan. 22, 2020), *report and recommendation adopted,* No. 1:18-CV-181, 2020 WL 773440 (N.D.W. Va. Feb. 18, 2020) (noting, in the context of a 28 U.S.C. § 2241 motion, that the BOP's decision regarding place of imprisonment, including whether to place an inmate in an RRC or on home confinement, is "not reviewable" by a court under the Administrative Procedures Act, unless there is "clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority"); *Stanley v. Whitehead*, No. CIV. A RWT-09-2848, 2010 WL 2011553, at *2 (D. Md. May 19, 2010) ("[T]he decision to place an inmate on home confinement is within the discretion of the BOP.") (citing 18 U.S.C. § 3624(c)); *Chase v. Berkebile*, Civil Action No. 5:10-0352, 2010 WL 7171335, at *3 (S.D. W. Va. May 10, 2010) (rejecting similar claim both as unripe and for failure to exhaust); *Wright v. Warden, FCI-Cumberland*, No. CIV.A. RDB-10-671, 2010 WL 1258181, at *1–*2 (D. Md. Mar. 24, 2010) (dismissing § 2241 motion challenging BOP's refusal to place movant in home confinement because he failed to exhaust his administrative remedies); *Yannucci v. Stansberry*, No. 2:08CV561, 2009 WL 2421546, at *4 (E.D. Va. July 28, 2009) (rejecting claim that BOP erred in not granting relief under the Second Chance Act and explaining that 18 U.S.C. § 3621(c) and 3624(b) "grant the BOP sole discretion to transfer a prisoner to an RRC for a period not to exceed twelve months").

The court recognizes that Day technically only requests a *recommendation* for such a placement and not that the court order it. (Mot. 1.) But it is not clear that this court may make a

*post-sentencing*, non-binding recommendation of imprisonment placement. *See United States v. Somers*, No. 3:15-cr-10, 2022 WL 5225934, at *2 (W.D. Va. Oct. 5, 2022) (collecting authority and noting judicial disagreement). Even assuming the court could make such a recommendation, it would not do so for the same basic reason given by the *Somers* court and many of the cases it cites: the Bureau of Prisons is in a better position that this court to evaluate "how [the defendant] has done and is doing, and how he will likely do in the future." *Id.* at *3 (citations omitted).

### III.  CONCLUSION AND ORDER

For the reasons stated above, it is hereby ORDERED that Day's motion for compassionate release or for relief under the Second Chance Act (Dkt. No. 79) is DENIED. The clerk is directed to provide a copy of this order to Day and all counsel of record.

Entered: April 15, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge